IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JOHN MORO,** | ) | |
| Plaintiff, | ) ) ) | |
| V. | ) ) | Civil No. **05-452-JPG** |
| **ANGELA WINSOR, et al.,** | ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

Before the Court is defendants Gregory Lambert, Roger Walker, Jr., Julie Wilkerson and Angela Winsor's motion for summary judgment. **(Doc. 76).** This Report and Recommendation is respectfully submitted to United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

Plaintiff John Moro is in the custody of the Illinois Department of Corrections, housed at all relevant times at Big Muddy River Correctional Center. The amended complaint asserts that his civil rights have been violated by the defendant prison officials. **(Doc. 14).** As summarized in the District Court's threshold order:

> Plaintiff states that he practices the Ordo Templi Orientis ("OTO") religion, also known as Gnostic Catholics or Thelemites. He states that Defendants have prevented him and other inmates from practicing the religion in the following ways. Religious books and mail from OTO chaplains are sent for publication review instead of to the acting chaplain, causing significant delays in receipt. Tarot cards which are "essential to our religious practice" are banned from the prison. Defendants have an unwritten policy to exclude inmates, including Plaintiff, who practice the religion from obtaining jobs paying over $14.60 per month. Defendants have implemented a policy of transferring to another facility inmates who practice the religion and threaten to use the courts to obtain constitutional relief; Plaintiff himself was transferred to Shawnee

1

>Correctional Center when he threatened to use the courts to guarantee his religious practices. Plaintiff and other inmates have been denied religious tapes and lectures, use of the chapel, and religious items including yi ching sticks, an altar, a shrine, magical implements, sicils, talismans, symbols, pouches, abramelin oil, and prayer beads. Plaintiff states that grievances concerning his right to practice his religion have gone unanswered. Plaintiff further states that Defendants have refused to deal with his religious requests, thereby violating the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA").

**(Doc. 12, pp. 2-3 (The amended complaint only changed the first name of defendant Walker)).**

Although the Court's threshold order only noted plaintiff's First Amendment and RLUIPA claims, plaintiff clearly relies on the Equal Protection Clause of the Fourteenth Amendment. **(*See* Doc. 14, p. 5).** It is also worth noting that although plaintiff often asserts that the defendants' actions impinged upon the rights of other inmates, this is not a class action, so plaintiff can only assert his own rights. Although the case caption lists "Ordo Templi Orientis Gnostic Catholics" **(Doc. 1, p. 1)**, there has never been a motion for class certification, only plaintiff is being assessed a filing fee, and plaintiff, who is not an attorney and who is proceeding pro se, cannot represent anyone but himself.

The defendants argue that:

1. Plaintiff cannot show, as a matter of law, that his First Amendment rights were violated;

2. Plaintiff cannot show, as a matter of law, that the defendants violated RLUIPA;

3. Defendants are entitled to qualified immunity;

4. Claims against the defendants in their official capacities are barred by the Eleventh Amendment;

5. Plaintiff has failed to prove personal involvement by defendants Walker and Lambert, as required by 42 U.S.C. § 1983; and

> 6. Plaintiff has failed to prove the personal involvement of defendants Winsor and Wilkerson in denying plaintiff work assignments, as required by 42 U.S.C. § 1983.

**(Docs. 76 and 77).**

In response, plaintiff Moro takes issue with the defendants' statement of facts, contends the defendants are misconstruing his claims, and generally asserts that there are questions of fact that preclude summary judgment. **(Doc. 94).** In reply, the defendants take issue with plaintiff's contentions about the underlying facts and generally reiterate their arguments for summary judgment (without citations to any authority). **(Doc. 100).**

## Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *see Celotex Corp. v. Catrett,* **477 U.S. 317, 322 (1986);** *Spath v. Hayes Wheels Int'l-Ind., Inc.,* **211 F.3d 392, 396 (7th Cir. 2000).** In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 255 (1986);** *Spath,* **211 F.3d at 396.**

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison,* **446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted);** *Celotex,* **477 U.S. at 322-26;** *Johnson v. City of Fort Wayne,* **91 F.3d 922, 931 (7th Cir. 1996).** A genuine issue of material

fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson,* **477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* **475 U.S. 574, 586 (1986)**. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* **477 U.S. at 252;** *Insolia v. Phillip Morris Inc.,* **216 F.3d 596 (7th Cir. 2000).**

### 1. First Amendment Rights

The First Amendment to the Constitution of the United States protects the "free exercise" of religion. "An inmate retains the right to exercise his religious beliefs in prison." *Kaufman v. McCaughtry*, **419 F.3d 678, 681 (7th Cir. 2005) (citing** *Tarpley v. Allen County*, **312 F.23d 895, 898 (7th Cir. 2002)).** The Supreme Court has made clear that prisoners adhering to unconventional religious precepts are entitled to a reasonable opportunity to pursue their faith, comparable with that afforded adherents to conventional religions. *Cruz v. Beto*, **405 U.S. 319, 322 (1972).**

> The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.

*Hernandez v. C.I.R.* **490 U.S. 680, 699 (1989) (internal citations omitted).**

The First Amendment also states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." This principle mandates government neutrality with respect to a particular religion, between religion and nonreligion, between different religions, and between sects of a religion. *McCreary County v. American*

4

*Civil liberties Union*, **545 U.S. 844,___ , 125 S.Ct. 2722, 2733 (2005);** *Vision Church v. Village of Long Grove*, **468 F.3d 975, (7th Cir. 2006);** *Kaufman v. McCaughtry*, **419 F.3d 678, 682 (7th Cir. 2005).** "A government policy or practice violates the Establishment Clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion. *Lemon,* 403 U.S. at 612-13, 91 S.Ct. 2105; *Books v. City of Elkhart,* 235 F.3d 292, 301 (7th Cir.2000)." *Kaufman v. McCaughtry*, **419 F.3d 678, 683 (7th Cir. 2005).** "[A] violation of the Free Exercise Clause is predicated on coercion while the Establishment Clause violation need not be so attended." *School District of Abington Township., Pa. v. Schempp*, **374 U.S. 203, 223 (U.S. 1963).**

"Prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." *Cutter v. Wilkinson*, **544 U.S. 709, 725 n. 13 (2005).** "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others to merit First Amendment protection." *Thomas v. Review Board of the Indiana Employment Security Division*, **450 U.S. 707, 714 (1981).** The defendants do not question or otherwise challenge the sincerity of plaintiff Moro's religious beliefs or the validity of what plaintiff states about his religion. This Court notes that in April 2008 the Court of Appeals for the Seventh Circuit decided *Koger v. Bryan*, 523 F.3d 789, 800-801 (7th Cir. 2008), which pertained to a request for a non-meat diet by another OTO member; the prisoner plaintiff essentially prevailed on his RLUIPA claim.

"[I]t is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion." *School District of Abington Township., Pa. v. Schempp*, **374 U.S. 203, 223 (U.S. 1963);** *see also O'Leary v. Mack*, **80 F.3d**

5

**1175, 117-1180 (7th Cir. 1996) (a substantial burden is one that forces one to refrain from religiously motivated conduct, or inhibits or constrains religious conduct or expression).** According to plaintiff's deposition testimony, he has been denied items that are essential to the practice of his religion: certain books, tarot cards, yi ching sticks, prayer beads, abramelin oil and pseudo implements (e.g., a paper sword), religious feasts (in terms of communal gathering, not special dietary requirements), and being given religious holidays "off." **(*See* Doc. 77-2, pp. 6 and 10-11; Doc. 77-3, pp. 3-4 and 9; and Doc. 1-2, pp. 4-6).**

Relative to books and tapes (which are presumably an alternate format of required religious texts), plaintiff takes issue with delays of seven months to a year while his religious materials were reviewed by the Publication Review Committee, as opposed to the chaplain at Big Muddy. (***See*** **Doc. 77-2, pp. 5-6).** Defendants correctly note that religious publications are reviewed by the Publication Review Committee, although the Committee may confer with the institution's chaplain, and there is no prescribed time-limit for the review. ***See*** **20 Ill. Admin. Code §§ 425.80 and 525.230.** Defendants assert, without citation to legal authority, that a delay does not amount to a constitutional violation. Furthermore, defendants argue that, because plaintiff currently has religious books in his possession, he cannot show that he suffered any damages. Plaintiff concedes that the Committee has authority to review his publications, but he counters that his religion has a required reading list with different levels that must be accomplished, and the delay in providing the books has prevented him from practicing that aspect of his religion for seven to 12 months when materials have had to go through the Committee. (***See*** **Doc. 77-3, p. 3; and Doc. 94, p. 16).**

"[M]erely alleging an isolated delay or some other relatively short-term, non content-

6

based disruption in the delivery of inmate reading materials will not support, even as against a motion to dismiss, a cause of action grounded upon the First Amendment. ***Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987); see also *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999).** In this situation, it is not clear that the seven to 12 month delay is "relatively short-term" or a "substantial burden"– those questions will have to be assessed by the trier of fact. No explanation is offered for why review took so long. Furthermore, although the defendants focus on security concerns for reviewing books and other religious items, there is certainly the possibility that the delay is content-based. Therefore, summary judgment is inappropriate regarding the books and tapes.

Plaintiff also claims he was denied the opportunity to periodically gather in the institutional chapel or on religious feast days, as other religions are permitted. (***See* Doc. 77-2, pp. 16-18).** Plaintiff asserts that he made requests; the defendants assert that he did not. **(Compare Doc. 77-2, pp. 17-18 and Doc. Doc. 77-4, p. 4).**

In *Cruz v. Beto*, the Supreme Court stated in a footnote:

> We do not suggest, of course, that every religious sect or group within a prison- however few in number-must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable oportunities [sic] must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty.

***Cruz v. Beto*, 405 U.S. 319, 322 fn. 2 (1972).**

Defendants cite plaintiff's deposition testimony that, before he was imprisoned, if he could not attend mass, he would worship on his own. **(Doc. 77-2, p. 11).** However, as plaintiff points out, that statement has been taken out of context. Plaintiff explained that when he could

7

not attend a formal mass, he organized meetings with lectors and had a group of nine with whom he regularly communed. **(Doc. 77-2, p. 11).** Plaintiff's religion apparently includes communal feasts and opportunities to talk and share ideas. **(*See* Doc. 77-2, pp. 10-11).** Insofar as the defendants note that not every religion can receive chapel time, due to scheduling and security, they do not elaborate on what consideration went into denying plaintiff's purported requests. ***See Koger v. Bryan*, 523 F.3d 789, 800-801 (7th Cir. 2008).** Thus, questions of fact remain which preclude summary judgment regarding religious services and feasts.

Similarly, material questions of fact remain which preclude granting summary judgment regarding the alleged prohibition of religious items, such as tarot cards, yi ching sticks, prayer beads, abramelin oil and pseudo implements (e.g., a paper sword). Defendant Winsor's affidavit states that had plaintiff requested such items, the request would have been denied because such items "could be used to manipulate other inmates, communicate secretly, conduct commerce, or were a threat to the safety and security of the institution." **(Doc. 77-4, p. 4).** Of course, the same could be said of a ballpoint pen; the point being that such a blanket assertion cannot merely be taken as fact. ***See Koger v. Bryan*, 523 F.3d 789, 800-801 (7th Cir. 2008).**

### 2. RLUIPA

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

**42 U.S.C. Section 2000cc-1(a);** *Cutter v. Wilkinson,* **544 U.S. 709, 712 (2005).**

Citing *Civil Liberties for Urban Believers v. Chicago*, 342 F.3d 752 (7th Cir. 2003), the defendants assert that plaintiff has failed to state a viable RLUIPA claim because there has been no "substantial burden" on his right to exercise his OTO religion. In *Civil Liberties for Urban Believers v. Chicago* the Court of Appeals for the Seventh Circuit discussed the meaning of "substantial burden":

> [I]n the context of RLUIPA's broad definition of religious exercise, a land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise-including the use of real property for the purpose thereof within the regulated jurisdiction generally-effectively impracticable.

*Id.*, **342 F.3d at 761.** Defendants assert that there was no substantial burden, but plaintiff's deposition testimony indicates the delay in receipt of religious books, and the denial of services, feasts and religious items were necessary to the practice of his religion. (*See* **Doc. 77-2, p. 6 and Doc. 77-3, p. 2-4**). And, as touched on above, the defendants' bald assertions that the compelling interest in prison safety and security, and that there is no less restrictive means for securing those interests cannot support summary judgment. There is absolutely no evidence regarding the consideration of less restrictive means. Consequently, material questions of fact remain which preclude summary judgment regarding the RLUIPA claim. *See Koger v. Bryan*, **523 F.3d 789, 800-801 (7th Cir. 2008).**

### 3. Qualified Immunity

Qualified immunity shields officers from liability for civil damages where "their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).** The defendants argue that there is no clearly established right encompassing the alleged delay and denials. They again assert that plaintiff was able to practice his religion on his own.

As noted above, *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987), and *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999), establish that a delay that is not "relatively short" and that is content-based would violate the First Amendment. And, as held in *Koger v. Bryan*, 523 F.3d 789, 802-803 (7th Cir. 2008), RLUIPA, passed in September 2000, did not announce new law, and the components of its analysis have been used for a long time relative to First Amendment issues. The constitutional parameters of the "free exercise" and "establishment" clauses are long-established and already set forth above. Therefore, the relevant law is well established, but it remains to be seen whether once the facts are established the defendants will be entitled to qualified immunity.

### 4. Official Capacity and the Eleventh Amendment

The defendants appear to be sued in both their individual and official capacities. Money damages may only be sought from the defendants individually; official capacity suits are actually suits against the State and the Eleventh Amendment bars such damages actions. ***Kentucky v. Graham*, 473 U.S. 159, 166-167 and 169 (1985).** Official capacity suits under Section 1983 for prospective injunctive relief are permissible. ***Owen v. Lash,* 682 F.2d 648, 654 (7th Cir.1982) (quoting *Edelman v. Jordan,* 415 U.S. 651, 677 (1973) (citing *Ex parte Young,* 209 U.S. 123 (1908); *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459 (1945))) (internal citations and quotation marks omitted).** Therefore, plaintiff's claims against the defendants in their official

capacities for money damages clearly should be dismissed. Insofar as plaintiff seeks injunctive relief, he acknowledges that he has been transferred from Big Muddy Correctional Center, thereby rendering any claim for prospective injunctive relief moot.[1] However, the Section 1983 claims against the defendants in their individual capacities remain.

The defendants do not note any distinction between the constitutional claims brought under 42 U.S.C. § 1983, and the RLUIPA (42 U.S.C. § 2000cc-1, et seq.) claim, which is an independent basis for suit. RLUIPA allows a person to bring a claim "and obtain appropriate relief against a government." **42 U.S.C. § 2000cc-2(a).** "Government" is defined in RLUIPA as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law." **42 U.S.C. § 2000cc-5(4)(a)(iii).** Therefore, it is axiomatic that RLUIPA authorizes suit against government officials in their official capacities. Section 2000cc-2 provides that an individual may obtain "appropriate relief," although the limitations of the Prison Litigation Reform Act (PLRA) (42 U.S.C. § 1997e(e)) still apply. **(42 U.S.C. § 2000cc-2).** In *Koger v. Bryan*, 523 F.3d 789, 804 (7th Cir. 2008), the Court of Appeals for the Seventh Circuit dealt with a situation similar to this, in that any claim for injunctive relief was moot, but claims for monetary damages remained. The appellate court, cited to *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007), for the proposition that nominal damages remain available under RLUIPA and the PLRA. ***Koger*, 523 F.3d at 804.** Therefore, unlike the Section 1983/constitutional claims, the RLUIPA claims against the defendants in their

---

[1] There is no argument that plaintiff is likely to be transferred back to Big Muddy, and this Court, by separate order, has noted that plaintiff is free to file a similar action regarding his treatment at Lawrence Correctional Center.

official capacities for nominal damages (since physical injuries are not claimed) are not barred by the Eleventh Amendment.

### 5. Personal Involvement

Personal involvement is required for liability to attach under 42 U.S.C. § 1983. A defendant must be 'personally responsible for the deprivation of a constitutional right." ' ***Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001),** *quoting **Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001)*; see also **Monell v. Department of Social Services,* 436 U.S. 658 (1978); *Eades v. Thompson,* 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth,* 644 F.2d 653, 655-56 (7th Cir. 1981).** "The purpose of § 1983 is to deter state actors ... from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution." ***Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998) (quoting *Wyatt v. Cole,* 504 U.S. 158, 161 (1992)).** Accordingly, the respondeat superior theory of liability cannot be utilized in a Section 1983 action. ***Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).**

Illinois Department of Corrections Director Walker, and Warden Lambert are entitled to summary judgment on all Section 1983 claims. Plaintiff's deposition testimony reflects that he is only suing Walker because of a pattern of treatment at the institutional level. **(Doc. 77-2, p. 18).** Furthermore, the affidavit of Jackie D. Miller, Chairperson of the Illinois Department of Corrections Administrative Review Board, the final step in the grievance process, indicates that Miller receives all correspondence on Walker's behalf and she acted as his designee. **(Doc. 77-4, pp. 6-8).** According to plaintiff's deposition testimony, he is suing defendant Lambert because he is the warden, and it is his institution. **(Doc. 77-3, p. 11-12).** Therefore, it is clear that

plaintiff is attempting to use the respondeat superior theory of liability, which is impermissible with respect to Section 1983.

Similarly, Assistant Warden Wilkerson and Supervisor Winsor are entitled to summary judgment relative to plaintiff's Section 1983 claims regarding the allegations that plaintiff was improperly denied higher paying job assignments and that his transfer was retaliatory. According to their uncontradicted affidavits, neither Wilkerson, nor Winsor made the final decision regarding plaintiff's job assignments or transfer. **(Doc. 77-4, pp. 2 and 4).**

In contrast, by its very terms, RLUIPA pertains to the "government" in the broadest sense. "Government" is defined as including, among other things, a State, a State agency, an official of a governmental entity, and any other person acting under color of law. **42 U.S.C. § 2000cc-5(A).** Liability via the respondeat superior theory is therefore implicit. ***See generally Smith v. Allen*, 502 F.3d 1255, 1271-1273 (11th Cir. 2007) (discussing the distinction between individual capacity and individual capacity and noting that RLUIPA was enacted pursuant to the Art. 1 spending power, which per *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005), does not apply to individuals)).** Therefore, all of the RLUIPA claims based on the respondeat superior theory of liability against Walker, Lambert, Wilkerson and Winsor remain.

**Recommendation**

For the aforestated reasons, it is this Court's recommendation that defendants Gregory Lambert, Roger Walker, Jr., Julie Wilkerson and Angela Winsor's motion for summary judgment **(Doc. 76)** be granted in part and denied in part. More specifically if this Court's recommendations are adopted in full:

1. Defendants Walker and Lambert are entitled to summary judgment relative to all of plaintiff's Section 1983 claims, as they lacked personal involvement;

2. Defendants Wilkerson and Winsor are entitled to partial summary judgment, in that they lacked personal involvement relative to plaintiff's Section 1983 claims regarding the denial of higher-paying jobs and retaliatory transfer, but Section 1983 claims against them relative to religious books, tapes and other religious items, chapel and feasts remain against Wilkerson and Winsor in their individual capacities for monetary damages; Section 1983 claims against Wilkerson and Winsor in their official capacities for monetary/compensatory damages are barred by the Eleventh Amendment and claims for injunctive relief are moot; and

3. All RLUIPA claims against defendants Walker, Lambert, Wilkerson and Winsor in their official capacities remain, but only for nominal damages, and all claims for injunctive relief are moot.

**DATED: August 5, 2008**               **s/ Clifford J. Proud**
                                         **CLIFFORD J. PROUD**
                                         **U. S. MAGISTRATE JUDGE**

### Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **August 22, 2008**.