IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOHN MORO,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) Civil No. **05-452-CJP** |
| | ) |
| **ANGELA WINSOR, et al.,** | ) |
| | ) |
| Defendant. | ) |

## ORDER

**PROUD, Magistrate Judge:**

Before the Court is plaintiff John Moro's motion for new trial, pursuant to Federal Rule of Civil Procedure 59. (Doc. 154). Defendants Gregory Lambert, Roger E. Walker, Jr., Julie Wilkerson and Angela Winsor have filed a response.[1] (R. 155). Although plaintiff has filed a notice of appeal (Doc. 158), in accordance with Federal Rule of Appellate Procedure 4 (a)(4)(B)(I), the notice does not become effective until after the motion for new trial is decided. Therefore, this Court has not been divested of jurisdiction and may consider the motion.

Plaintiff was, at all relevant times, an inmate at Big Muddy River Correctional Center, and a practitioner of the Ordo Templi Orientis ("OTO") religion. He alleged that the defendants impermissibly interfered with the practice of his religion and treated his religion less favorably than other religions. Plaintiff proceeded to trial on claims under the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). (Doc. 124).

---

[1] Defendants Regie Adams and Dan Walker did not join in the response.

At the close of plaintiff's case in chief, the Court granted a directed verdict relative to defendant Lambert. (Doc. 144). The jury returned a verdict in favor of defendants Winsor, Adams and Wilkerson, and against plaintiff on all claims. (Doc. 145, 146 and 149). Defendant Walker, who was in the case solely in his official capacity as Director of the Illinois Department of Corrections, for purposes of securing injunctive relief under RLUIPA, was dismissed by the Court after no constitutional or RLUIPA violations were found. (Doc. 150). Final Judgment was entered accordingly. (Doc. 153).

## Issues Presented

Plaintiff argues that a new trial should be granted for the following reasons:

1. Counsel was not appointed to represent plaintiff, which was prejudicial in that:

   a. Plaintiff proceeded pro se, while the defendants were represented by two attorneys in a battle over conflicting testimony;

   b. Plaintiff was unable to do the discovery necessary to identify "John Doe" defendants or to glean information necessary for trial from the defendants;

   c. Plaintiff was unable to present witnesses or show the jury tarot cards; and

   D. Subpoenas should have been issued to plaintiff without requiring witness fees to be tendered, as he had no other way of requesting their voluntary appearance at trial;

2. The jury instructions did not comport with *Koger v. Bryan*, 523 F.3d 789 (7th Cir. 2008), relative to the burden of proof for the RLUIPA claim; and

3. The Court should not have ruled out injunctive relief merely because no individual was found to have violated the constitution or RLUIPA.

**Standard of Review**

"In ruling on a motion for new trial [made pursuant to Federal Rule of Civil Procedure 59(a)], federal law requires a district court to determine 'whether the verdict is against the weight of the evidence ... the damages are excessive, or ... for other reasons, the trial was not fair to the party moving.'" *Kapelanski v. Johnson,* 390 F.3d 525, 530 (7th Cir. 2004) (quoting *EEOC v. Century Broadcasting Corp.,* 957 F.2d 1446, 1460 (7th Cir. 1992) (internal citation omitted)). A verdict determined to be "against the weight of the evidence" should only warrant a new trial "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino v. Kaizer,* 58 F.3d 310, 315 (7th Cir. 1995) (citing *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1353 (3rd Cir. 1991)).

**Analysis**

**1.  Appointment of Counsel**

Plaintiff contends that "it would have been advisable" for the Court to appoint counsel to represent him, because he was attempting to present a complex case and the defendants were represented by two attorneys. Plaintiff also links his *pro se* status to difficulties during the discovery process and at trial.

Plaintiff sought appointment of counsel on eight occasions. (Docs. 3, 39, 46, 51, 55, 79, 81 and 120). Initially, plaintiff's requests focused on the fact that he is indigent and his assertion that the case was complex. Subsequently, plaintiff complained of limited access to the prison law library, and then that the law library was closed and he had no access to a typewriter or legal materials. Plaintiff later asserted multiple times that the discovery process was beyond his ken

and it was essential that he identify the "John Doe" prison administrator behind the confiscation of his religious materials, et cetera. After propounding discovery requests, plaintiff attributed his dissatisfaction with the responses (which did not produce a specific name) to the fact that he was not a trained attorney. Later, acknowledging that he had conducted discovery, reviewed case law and consulted with law clerks, plaintiff concluded he was not sufficiently skilled to conduct depositions. Lastly, plaintiff argued that without counsel he could not identify incarcerated and recently released inmate witnesses or subpoena witnesses.

Noting that there is no constitutional right to counsel in a civil case and applying the standard annunciated in *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007), the Court concluded that the appointment of counsel was not warranted at any juncture in the case because: (1) the case was not too complex relative to plaintiff's demonstrated abilities; (2) he had sufficient access to legal materials to pass constitutional muster and had demonstrated that he could conduct discovery, even though he was dissatisfied with the defendants' responses; incarcerated witnesses would be located and brought to trial, but released inmates and other witnesses would have to be subpoenaed for trial; (3) and although religious items plaintiff desired to secure for display at trial could not be secured, plaintiff admitted he could describe the items to the jury. (Docs. 17, 73, 91 and 127).

While in prison, plaintiff has obtained several associate's degrees, a bachelor's degree, a master's degree and a juris doctorate. Plaintiff is articulate and assertive, and he demonstrated throughout the pretrial process that was intellectually capable of successfully prosecuting his case, without the assistance of counsel– if he chose to focus on the issues in the case and not an alternate agenda. Cross-examination of witnesses was definitely within plaintiff's abilities.

When a litigant is proceeding as a pauper, as plaintiff is, the Court assumes the duty of serving all process, but there is no waiver or advancement of the required prepayment of the witness fees. 28 U.S.C. § 1915(d); *see also* 28 U.S.C. § 1821(f); and *McNeil v. Lowney*, 831 F.2d 1368, 1373 (7th Cir. 1987). Therefore, the Court would not issue subpoenas until the witness fees were produced by plaintiff. (Doc. 129). The Court arranged to receive any address information the Attorney General could obtain regarding those individuals on plaintiff's witness list who had been released on parole. (Doc. 120).

The Court remains convinced that the appointment of counsel to represent plaintiff was not warranted at any juncture in the case, and that plaintiff received due process.

## 2. The Jury Instructions

Plaintiff argues that the jury instructions did not comport with *Koger v. Bryan*, 523 F.3d 789 (7th Cir. 2008), relative to the burden of proof for the RLUIPA claim. RLUIPA, in relevant part, prohibits government entities, such as prisons, which receive federal funds from imposing a substantial burden on an inmate's religious exercise unless the government can demonstrate "that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2); *see also Koger*, 523 F.3d at 796. First, a plaintiff must establish that the regulation at issue imposes a substantial burden on his religious exercise. 42 U.S.C. § 2000cc-2(b); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (7th Cir. 2003); *Koger*, 523 F.3d at 796. As stated in *Koger*, once the plaintiff establishes a prima facie case, the defendant bears the burden of persuasion on any other element, i.e. whether the practice is the least restrictive means of furthering a compelling governmental interest. *Koger*,

523 F.3d at 796.

Defendants' jury instructions Nos. 19 and 20 were given at trial. Instruction No. 19 explained in pertinent part that plaintiff was alleging that defendants Adams, Wilkerson and Winsor denied plaintiff religious items, books and mail, as well as group worship, or the ability to celebrate religious feasts, and they delayed his access to religious publications; and that the foregoing was the proximate cause of his injuries. Instruction No. 20 assigned plaintiff the burden of proving: (1) the defendants acted in the manner claimed; (2) the plaintiff had a sincere religious belief; (3) that IDOC rules imposed a substantial burden on plaintiff's exercise of his religious belief; and (4) the wrongful conduct of the defendants was the proximate cause of the injury to the plaintiff. If those propositions were proved, jurors were then to consider whether the defendants' had fulfilled their burden of proving their actions were the least restrictive means of furthering a compelling government interest. Instructions Nos. 19 and 20 mirror RLUIPA and *Koger*.

As a preliminary matter, "[p]rison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." ***Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005).** However, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others to merit First Amendment protection." ***Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 714 (1981).** *Koger* recognized that, although it is improper to inquire into whether the belief is required or central to a plaintiff's religion, the sincerity of the professed religiosity may be questioned. *Koge*r, 523 F.3d at 797.

Plaintiff also takes issue with being assigned the burden of showing that the defendants

6

actions were the proximate cause of his injury.  Whether couched in terms of causation or personal involvement, it is plaintiff's burden to prove that a defendant cause the harm alleged and that the harm caused the damages alleged.  *See O'Malley v. Litscher*, 465 F.3d 799, 802 (7th Cir. 2006); *Lighthouse Community Church of God v. City of Southfield*, 2007 WL 756647 at *3-4 (E.D. Mich. 2007); *Brown v. D.O.C. PA*, 2007 WL 4322980 at *14 (W.D. Pa. 2007).  Plaintiff offers no authority for any version of strict liability under RLUIPA.

### 3.  Injunctive Relief

Plaintiff contends that the Court should not have ruled out injunctive relief merely because no individual was found to have violated the constitution or RLUIPA.  More specifically, plaintiff contends that by not appointing him an attorney to aid in uncovering the identity any "John Doe" defendant who violated plaintiff's rights under the constitution or RLUIPA (in unspecified ways), the Court turned this action into a game of "pin the tail on the donkey."

As explained above, the appointment of counsel was not warranted.  Plaintiff was given additional time for discovery, but at some point, time must be called.  When plaintiff failed to identify the John Doe defendants, they were dismissed prior to trial.

Plaintiff never contended that any specific regulation was improper; rather, his claims pertained to how prison rules were applied to his situation, by the named defendants and the John Doe defendants.  Consistent with an earlier ruling by U.S. District Judge J. Phil Gilbert, the final pretrial order makes clear that injunctive relief was only applicable to defendant Walker as Director of the IDOC. (Docs. 114 and 124).  Thus, absent a finding against one of the other defendants, injunctive relief was not available.

**IT IS THEREFORE ORDERED** that, for the aforementioned reasons, there is no apparent miscarriage of justice or other cause for a new trial; accordingly, plaintiff Moro's motion for a new trial **(Doc. 154)** is **DENIED** in all respects.

**IT IS SO ORDERED.**

**DATED: March 10, 2010**

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**
